IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2010 JUN -4 P 2:47

CLERK'S OFFICE
AT BALTIMORE
BY_____ DEPUTY

JAMES CALHOUN-EL, 160083
Plaintiff

v

Civil Action Case No. RDB-09-2470

GARY MAYNARD, Secretary
MICHAEL STOUFFER, Commissioner
JOHN P. GALLEY, former Warden
JOHN A. ROWLEY, former Warden
BOBBY P. SHEARIN, Warden
RICHARD GRAHAM, Assistant Warden
PATRICIA WILEY, Correctional Dietary
  Supervisor
TERRANCE ELLSWORTH, Correctional
  Dietary Supervisor
VAUGHN WHITEMAN, Sergeant
JEFFREY JOHNSON, Sergeant
THOMAS SIRES, Sergeant
DALE SMITH, Sergeant
LEAH YOUNGBLOOD, Sergeant
ROBERT HARRIS, Sergeant
WILLIAM LEYDIG, Sergeant
RANDOLPH BENNETT, CO, II
DANIEL NAVE, CO, II
JUSTIN ADAMS, CO, II
RICHARD MAWHINNEY, CO, II
THOMAS DORCON, CO, II
BRYAN WALKER, CO, II
JOSEPH LAMP, CO, II
FREDERICK J. NASTRI, Adjustment
  Hearing Officer
KEVIN LAMP, Chaplin

Defendants

## MEMORANDUM OPINION

Pending is James Calhoun-El's civil rights complaint under 42 U.S.C. § 1983 for damages and injunctive relief. Calhoun-El, who is proceeding pro se, is an inmate at the North Branch Correctional Institution. Defendants Secretary Gary D. Maynard, Commissioner Michael Stouffer, former Warden Jon P. Galley, former Warden John A. Rowley, Warden Bobby P. Shearin, Assistant Warden Richard Graham, Correctional Dietary Supervisor Patricia Wiley, Correctional Dietary Supervisor Terrance Ellsworth, Sgt. Vaughn Whiteman, Sgt. Jeffrey

Johnson, Sgt. Thomas Sires, Sgt Dale Smith, Sgt. Leah Youngblood, Sgt. Robert Harris, Sgt. William Leydig, C.O. II Randolph Bennett, C.O. II, Daniel Nave, C.O. II, Justin Adams, C.O.II, Richard Mawhinney, C.O. II, Thomas Dorcon, C.O. II, Bryan Walker, C.O. II, Joseph Lamp, Adjustment Hearing Officer Frederick J. Nastri and Chaplain Kevin Lamp, by their counsel move for dismissal or summary judgment. Calhoun-El has filed a reply.

Defendants rely on materials beyond the scope of the Complaint, and their motion shall be construed as one for summary judgment pursuant to Fed R. Civ. P. 56. This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md 2009). For the reasons set forth below, Defendants' Motion for Summary Judgment will be GRANTED.

## PLAINTIFF'S CLAIMS

Calhoun-El complains that he was: 1) denied toilet and water use for eighteen hours 2) subjected to four cavity searches in five hours with one in front of female corrections officers; 3) denied a ladder to access the top bunk, resulting in a fall and back injury; 4) the object of excessive force resulting in a fractured finger and a gash on the left arm on February 29, 2008; 5) denied access to a wheelchair; 6) denied access to his medical diet; 7) denied access to the prison library; and 8) denied due process at his disciplinary hearings. Complaint, pp. 1-7.[1]

## BACKGROUND

On February 1, 2008, Calhoun-El was transferred from the Jessup Correctional Institutional to housing in a part of the Western Correctional Institution which was later designated as the North Branch Correctional Institution (NCBI). Paper No. 23, Defendants'

---

[1] The Complaint, as originally filed and supplemented, contained a litany of claims. On October 14, 2009, the Court ordered certain claims to proceed and dismissed those remaining without prejudice to refiling in a separate complaint. Calhoun-El subsequently filed new complaints in *Calhoun-El v. Maynard, et al.*, Civil Action No. RDB-09-3085 (D. Md) and *Calhoun-El v. Maynard*, Civil Action No. RDB-10-765 (D. Md). Calhoun-El's Reply in the instant action contains claims that were dismissed without prejudice or are being introduced for the first time. They will not be addressed here. If Calhoun-El wants to present new claims, they must be raised in a separate complaint.

Memorandum, n. 2. Calhoun claims on February 1, 2008, that he was stripped searched at the Jessup Correctional Institution upon transfer, again upon arrival at the Maryland Correctional Institution- Hagerstown while awaiting transfer to NBCI again at NCBI, housing Unit 2 where the search was observed by Sgt. Youngblood, and then, twenty minutes later strip searched upon arrival at segregation Unit 1. Calhoun-El claims that "most officials know Plaintiff is a Moslem and to be naked is degrading." Reply, pp. 10-11. He alleges that Lt. Leydig issued an infraction assigning Calhoun-El to 100 days segregation for refusing to submit to the fourth strip search.

Calhoun-El also alleges that excessive force was used against him on February 2, 2008. He states that he was restrained in cuffs in his cell and tried "to raise his hands in the slot but was unable due to back spasms. Several officers reached into the cell slot and forced both of Plaintiff's arms [sic] through the slot causing a fracture" of his left finger, a gash on his left arm and nerve damage to the left arm. Reply, p. 14. Calhoun-El states that he sought treatment, which the medical provider did not provide. *See id.*

### 1. Administrative Remedy Requests

Defendants' verified exhibits demonstrate that Calhoun-El has filed the following Requests for Administrative Remedies (ARPs) since transfer: [2]

A. ARP NBCI 0373-08, filed May 20, 2008, alleged denial of toilet paper and water use for eighteen hours. The ARP was dismissed as untimely. A subsequent appeal was dismissed as untimely;

---

[2] In his "Amended Complaint" Calhoun-El's complained about the ARP process at NBCI. The Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by a state. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Calhoun-El's disagreement over the manner his grievances are handled in this case does not give rise to a constitutional claim under § 1983. Arguably, if acts or omissions relating to the processing of inmate grievances interfere with an inmate's constitutional right to access the courts, a cognizable claim might be stated. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995), Calhoun-El, a frequent filer in this court, fails to allege or demonstrate that alleged mishandling of his ARPs has impeded presentment of his claims to the courts. Notably, Respondents do not raise failure to exhaust administrative remedies as an affirmative defense in this proceeding.

B. ARP NBCI 0374-08, filed May 20, 2008, alleged that four body cavity searches were conducted within five hours, one of which was performed in the presence of a female correctional officer. The ARP was dismissed as untimely. A subsequent appeal was dismissed as untimely;

C. ARP NBCI 0375-08, filed May 20, 2008, alleged use of excessive force on February 28, 2008 which resulted in a fractured finger and a gash on his left arm. The ARP and subsequent appeal were dismissed as untimely;

D. ARP NBCI 0421-08, filed May 24, 2008, alleged denial of access to a wheel chair. The ARP was investigated and dismissed because there was no medical necessity for a wheelchair Defendants' Exhibit 2E;

E. ARP NBCI, 0416-08,[3] filed May 26, 2008, alleged failure to provide a medical diet. The ARP was investigated, determined without merit, and dismissed. The ARP investigation found that Calhoun-El was receiving his diabetic diet, but had earlier been determined by a nurse as non-compliant with his diet, medication, and glucose monitoring. Calhoun-El had signed a Release of Responsibility form to be removed from his diabetic diet; Defendants' Exhibit 2F;

F. ARP NBCI 0475-08, filed June 21, 2008, alleging denial of ladder to access bunk resulted in fall and back injury. The ARP was dismissed after investigation. During investigation, Calhoun-El stated that he had fallen off a chair while trying to climb onto the top bunk, acknowledged that he should have been in the bottom bunk, and alleged that he injured his back while jumping down to the floor from the top bunk. Defendants' Exhibit 2c. The investigation concluded that Calhoun-El provided no

---

[3] Calhoun-El filed ARP NBCI 0509-09 on May 13, 2009. That ARP and its appeal were dismissed as repetitive to ARP NBCI 04-16-08. Respondents' Exhibit 2G.

evidence that his back condition resulted from a fall in his cell.

## 2. Library Visitation

Defendants have filed NBCI Librarian Mary Huebner's declaration in which she attests that she has never denied Calhoun-El access to the prison library. She attests that Calhoun-El's housing unit uses the library on Tuesdays, but she does not control which tiers or inmates from the unit may visit. Inmates can request additional library time by submitting a pass request. Generally, there is a waiting list for additional library time and the passes are issued by housing units. Calhoun-el was issued passes and visited the library on September 10, 2009, October 8, 2009, November 5, 2009, and December 3, 2009. He received passes for October 1, 2009, and October 29, 2009, but did not visit the library on those dates.

## 3. Infractions

On February 1, 2008, Calhoun-El was issued an infraction by Sgt. Leah Youngblood for refusing housing. Calhoun-El refused to attend the infraction hearing, was found guilty of the rule violation *in absentia,* and received thirty days of disciplinary segregation. Defendants' Exhibits 4 and 4a.

On August 10, 2008, Calhoun-El received an infraction for destroying state property and possession of contraband ("Lyrica") for hoarding medication to be taken only in front of staff. He was found guilty at the adjustment hearing, and received eighty days of disciplinary segregation and a reprimand. Defendants' Exhibit 4B.

On October 16, 2009, Calhoun-El received an infraction for lying and providing false information in an ARP investigation. Defendants' Exhibit 4C. *See supra*, p. 4, ARP NBCI 0475-08.

5

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. Id. at 249. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,* Inc., 346 F.3d 514, 522 (4th Cir.2003) (quoting Fed.R.Civ.P. 56(e)). In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union,* 424 F.3d 397, 405 (4th Cir.2005). However, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## ANALYSIS

1. **Conditions of Confinement Claims**

Calhoun-El claims that he was denied use of a toilet and water for eighteen hours, subjected to four body cavity searches in one day, once in the presence of a female officer, and fell after he was denied a ladder to climb to the top bunk. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment of the Constitution. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In order to establish the imposition of cruel and unusual punishment, an inmate must prove two elements-that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials acted with a sufficiently culpable state of mind.' *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Specifically, prison officials must consciously disregard a substantial risk of serious harm to an inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Calhoun-El fails to assert any factual predicate to show that the conditions about which he complains created a pervasive risk of harm to health or safety amounting to "deliberate

7

indifference." Sgts. Leydig and Youngblood have executed declarations in which they attest that they did not perform or witness any other officer perform a body cavity search on Calhoun-El. Defendants' Exhibits 5 and 6. Sgt Youngblood also attests she was unaware of any documentation regarding Calhoun-El's bunk assignment. Defendants' Exhibit 6. Moreover, Calhoun-El was assigned to the bottom bunk and failed to provide proof of his fall. Defendants' Exhibit 2C.

### 2. Excessive Use of Force

Calhoun-El alleges that he sustained a finger fracture and a gash on his left arm as a result of excessive force used against him on February 29. 2008. Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). The standard for Eighth Amendment excessive force claims consists of subjective and objective components. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Hudson*, 503 U.S. at 8. With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* However, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4. Fourth Circuit precedent interpreting *Hudson* previously held that in order to prevail on an excessive force claim, a plaintiff must provide more than *de minimis* injury. *See Norman v. Taylor*, 25 F3d 1259, 1263 (4th Cir. 1994) (overruled); *Riley v. Dorton*, 115 F3d 1159, 1166-68 (4th Cir. 1997) (overruled). However, the Supreme Court recently held that "[i]n requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of

this Court in Hudson ." *Wilkins v. Gaddy*, --- U.S. ----, 130 S. Ct. 1175 (2010). The Supreme Court explained that its holding in *Hudson* does not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 130 U.S. at 1178 (quoting *Hudson*, 503 U.S. at 7). The Court did not want an inmate who was the victim of excessive force to lose the ability to pursue an excessive force claim because he had "the good fortune to escape without serious injury." *Wilkins,* 130 U.S. 1179. Absence of serious injury, however, is not irrelevant. The extent of injury could indicate whether the use of force was thought to be necessary, and it could provide an indication of the amount of force actually applied. *See id* at 1178. A "push or shove," without a resulting discernible injury, almost always fails to state a claim for excessive force because, ' "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." ' *Id.* (quoting *Hudson*, 503 U.S. at 9).

In this case, Sgt. Vaughn Whiteman attests that he neither used nor witnessed excessive force against Calhoun-El on February 29, 2008. There is no record of a Serious Incident Report or Use of Force Report at NBCI for that date. Exhibit No. 8. Other than Calhoun-El's conclusory assertions, there is no legal or factual basis to conclude that officers used excessive force against him causing a finger fracture.

3. Medical Claims

Calhoun-El's claims are that he was denied access to a wheelchair and his medical diet. To state a claim for denial of medical care or inadequate medical treatment under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate deliberate indifference to a

9

serious need. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that the prisoner was suffering from a serious medical need and that prison staff members were aware of the need for medical attention but failed either to provide it or ensure needed care was available. *See Farmer,* 511 U.S. at 837.

First, there is no record that Calhoul-El requires a wheel chair. Exhibit 2E.[4] Next, an ARP investigation determined that Calhoun-El had waived his medical diet and did not comply with his diabetes treatment regimen. Further, Lts. Terrance Ellsworth and Patricia Wiley have attested that they did not deny Calhoun-El his medical diet or any other meal. For these reasons, the Court determines summary judgment in favor of Defendants is appropriate.

**4. Library Access**

Calhoun-El's complaint that he was denied law library access implicates the right of access to the courts. Access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343 (1996). In order to make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *See*

---

[4] In response to his ARP on this claim, Calhoun-El was advised:

> An investigation has revealed that you were seen on April 11, 2008, by Dr. Tessema in Housing Unit One Medical Treatment Room for chronic care. It was noted by Dr. Tessema that you walked from your cell to the treatment room without assistance and you stepped up onto the scale without difficulty. When an inmate comes in with an assist device (cane/wheelchair) or special need (cuff in front), they must be evaluated by a provider before it can be ordered in this institution. During your visit with Dr. Tessema he wrote an order for your physical therapy evaluation for the medical necessity of the assist devices. You failed to show up for your physical therapy evaluation on April 13th and May 5th and May 6th , you were seen by the physical therapist on May 11th. During this evaluation it was noted that you walked stiffly but had good balance, even with a 3-piece cuffing. Currently, NBCI's physical therapy services are being conducted at WCI. There is no absolute medical necessity for you to have an assist device, such as a cane or wheelchair at this time or to be cuffed in the front.

Respondents' Exhibit 2E.

*Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). Calhoun-El fails to allege any actual injury as a result of the purported denial of access. In any event, verified records submitted by Defendants show that Calhoun-El visited the library on several occasions and was issued passes for additional library access. Defendants are entitled to summary judgment in their favor on this claim.

### 5. Due Process Claim

Calhoun-El next claims that he was denied due process at his adjustment hearings. A prisoner is guaranteed minimal procedural safeguards under the Due Process Clause of the Fourteenth Amendment when facing a disciplinary hearing that may result in the loss of a liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), 418 U.S. at 556. A prisoner is entitled to due process before subjected to conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or disciplinary actions that "inevitably affect the duration of his sentence." *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). In addition to notice, hearing, and written findings, due process requires that the findings of the disciplinary hearing officer be supported by "some evidence in the record."*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

Calhoun's short-term placement on disciplinary confinement did not implicate a protected liberty interest. *See Sandin*, 515 U.S. at 487. Calhoun-El was provided advanced written notice of the disciplinary charges, provided an opportunity to answer the charges, and received a written statement of the reasons for the hearing examiner's determination. There is no genuine issue as to any material fact as to this claim and Defendants are entitled to a judgment as a matter of law.

### 6. Supervisory Liability

As a final matter, the Court notes that as to Secretary Gary D. Maynard, Commissioner J.

Michael Stouffer, former Warden John A. Rowley, and Warden Bobby P. Shearin, Calhoun-El raises no specific conduct on their part bearing on any of the claims presented here. To the extent that Calhoun-El attempts to hold these Defendants liable based on a theory of supervisory liability, the doctrine of respondeat superior does not apply in actions under 42 U.S.C. § 1983. *See Monell v. New York Dept. of Social Services*, 436 U.S. 658, 691 (1978). Consequently, Calhoun-El fails to articulate a cognizable claim against these supervisory officials.

## CONCLUSION

Considering the facts and all reasonable inferences in the light most favorable to Calhoun-El, the Court finds that no genuine issue as to any material fact is presented and Defendants are entitled to a judgment as a matter of law. Summary Judgment shall be entered in favor of Defendants by separate Order.

June 4, 2010
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE